IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | § | |
|---|---|---|
| FORREST L. SHAW, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 2:12-CV-00797-JRG |
| | § | |
| ZURICH AMERICAN INSURANCE CO., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion to Compel (Dkt. No. 43), filed May 12, 2014, and Defendant's Motion for Protective Order (Dkt. No. 52), filed June 3, 2014. Plaintiff Forrest L. Shaw ("Shaw") seeks to compel Defendant to produce certain documents and answer certain interrogatories; Defendant Zurich American Insurance Company ("Zurich") asks the Court to limit discovery in this case pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)(iii). For the reasons set forth below, the Court finds that Plaintiff's Motion (Dkt. No. 43) should be **GRANTED IN PART AND DENIED IN PART** and that Defendant's Motion (Dkt. No. 52) should be **DENIED**.

    I.    <u>BACKGROUND</u>

This is a diversity action concerning Zurich's decision to deny benefits allegedly owed to Shaw under an insurance policy issued by Zurich to Shaw's former employer. Shaw alleges that, while working as a commercial truck driver, he was involved in an accident in late 2010, and that this accident resulted in serious and disabling injuries. Shaw alleges that Zurich failed to pay

benefits that were owed to him. Shaw's Complaint brings suit, not only for breach of contract under Texas common law, but also for violations of the Texas Insurance Code. Shaw alleges that his benefits were denied in bad faith and that Zurich knowingly violated the Texas Insurance Code, and seeks exemplary damages.

## II. LEGAL STANDARDS

Sitting in diversity, federal courts "'apply state substantive law and federal procedural law.'" *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Although federal law generally looks to state law for guidance on questions of privilege, the federal work product doctrine is not a "privilege" within the meaning of Federal Rule of Evidence 501, and as such is a matter of federal law. *See, e.g.*, *United Coal Cos. V. Powell Const. Co.*, 839 F.2d 958, 966 (3d. Cir. 1988); *Allied Irish Banks v. Bank of America, N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007). The federal work product doctrine provides that a party is not entitled to obtain discovery of documents "prepared in anticipation of litigation" by "another party or its representative" absent a showing of substantial need and undue hardship to the party seeking discovery. Fed. R. Civ. P. 26(b)(3).

Under Federal Rule of Civil Procedure 26(b), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Relevant information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* A court must limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Id.*

### III. ANALYSIS

#### 1. Zurich's Claims of Privilege

Plaintiff first seeks discovery of certain documents from Zurich's "claims file" relating to this case. Zurich claims work product privilege over four documents: three "computer note entries" regarding "plan of action" and "file management" entered on December 11 and 12, 2012 (the day before Zurich issued its denial of Shaw's claim); and one "90-day Supervisory Review regarding plan of action" prepared on October 17, 2012.

Zurich argues that its December notes were prepared in anticipation of litigation, on the eve of its denial of benefits to Mr. Shaw. Shaw argues that Zurich could not have reasonably anticipated litigation before he filed suit. However, "[p]rudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2024 (3d ed. 2014); *accord, e.g.*, *Raso v. CMC Equipment Rental, Inc.*, 154 F.R.D. 126, 128-29 (E.D. Pa. 1994). It seems likely that Zurich, an insurance company, anticipated litigation from its denial of benefits; indeed, the timing of Zurich's computer notes suggests that the notes relate directly to the potential for litigation. Accordingly, the Court finds that Zurich properly withheld documents labeled ZAIC 25 in its privilege log because those documents are subject to work product protection.

Zurich does not mention its 90-day supervisory review in its responsive briefing. The supervisory review was prepared nearly two months before Zurich denied Shaw's claim. There is

no evidence that the supervisory review was prepared specifically in anticipation of litigation rather than in the course of Zurich's day-to-day business. The work product doctrine does not protect such materials. *See, e.g.*, *Allied Irish Banks*, 240 F.R.D. at 106. Accordingly, the Court finds that withheld document ZAIC 186 was not properly subject to a claim of work product protection and must be produced to the plaintiff.

### 2. Withheld Reserve Information

Zurich has redacted from its productions information respecting the amount of money it has held in reserve for Mr. Shaw's claims. Though its objections to Shaw's request for production cite "relevancy" and "confidentiality" objections, relevance is the only ground for objection set forth in Zurich's briefing. Zurich argues that the amount of money Zurich holds in reserve for a case has no relevance to the question of whether Zurich did or did not properly deny Shaw's claim. This argument, however, fails to address Shaw's claims for punitive damages and for knowing violations of the insurance code—particularly with respect to settlement. Without resolving questions about the final admissibility of evidence, it should be clear that the existence and amount of Zurich's reserve in this case may reasonably be expected to be relevant to, at a minimum, (a) whether Zurich denied Shaw's claims in good faith; and (b) whether it failed to engage in a good faith attempt to settle Mr. Shaw's claims in accordance with TEX. INS. CODE § 541.060. *See U.S. Fire Ins. Co. v. Bunge North Am., Inc.*, No. 05-2192-JWL-DJW, 2007 WL 1531846 (D. Kan. May 25, 2007). The Court finds that information about Zurich's reserves is relevant and discoverable and was improperly withheld.

### 3. Information Regarding Independent Medical Examiners

Shaw requests information regarding Zurich's past employment of the two Independent Medical Examiners it hired to review Shaw's claims. Zurich requests, for each case in which Zurich has hired either examiner, details concerning the amounts claimed, the amounts paid and denied, the basis for denying payment, and assorted administrative details. Shaw also requests documentation of amounts paid to said examiners. Zurich argues that its treatment of *other* claimants is irrelevant to its treatment of Shaw's claim. Shaw, however, alleges that Zurich deliberately hired its two examiners because it knew that they could be relied upon to arbitrarily and artificially deflate Shaw's claim. Such deliberate use of purportedly "independent" examiners as "cover" would in fact demonstrate bad faith on the part of Zurich, and Zurich's history with its medical examiners is clearly relevant to Shaw's claim. The Court notes that the information Shaw requests would not be overly burdensome for Zurich to gather, with the caveat that Zurich need not explain in detail its reasons for any denials of claims—a simple listing and identification of the reasons for denial will suffice.

### 4. Defendant's Affirmative Defenses

Shaw requests that the Court compel a more complete response to his third interrogatory, which requests that Zurich state the factual basis of each affirmative defense and that Zurich identify any evidence to be offered at trial and witnesses who will testify in support of the affirmative defense. Zurich's response to this interrogatory merely refers Shaw to Zurich's answer and states that "witnesses and exhibits will be identified in accordance with the Federal Rules of Civil Procedure and the Court's Docket Control Order."

Interrogatories seeking "an opinion or contention that relates to fact or the application of law to fact" are explicitly condoned by Federal Rule of Civil Procedure 33(a)(2). Obviously,

Zurich need not commit itself to a complete marshaling of all of its evidence before trial, but Shaw is within his rights to insist on a reasonable narrative description of Zurich's contentions and the basis thereof. In its briefing, Zurich makes no mention of this issue and presents no reason why it cannot provide such a narrative immediately.

### 5. Itemizations of Zurich's Claims and Benefits

Shaw requests that Zurich produce detailed itemizations of claims, bills, and expenses related to Shaw's case. Zurich responds that it has produced Shaw's entire case file as it is kept in its ordinary course of business and is not obligated to undertake a further effort to summarize or organize this information for Shaw's benefit. In this respect, Zurich is correct. Fed. R. Civ. P. 34(b)(2)(E)(i).

### 6. Zurich's Personnel Files

Shaw next requests that Zurich produce "a complete copy" of the personnel file of certain individuals participating in Zurich's decision to deny Shaw's claims. Zurich first argues that this information is irrelevant, but again overlooks the files' potential relevance to Shaw's claims of bad faith. Shaw alleges that Zurich deliberately denies legitimate insurance claims as a matter of course, and such a policy might well make itself evident in patterns of discipline or evaluation contained in Zurich employees' personnel files.

Zurich also claims that material in its employees' files is "confidential, privileged employment information" in which its employees have a protected privacy interest. Zurich cites to many district courts which have held that complete disclosure of personnel files is unwarranted. These cases seem to be premised on the notion that "protecting individuals' expectations of privacy and/or promoting free communication of candid evaluations and

criticisms within an organization was strong enough to limit liberal pretrial discovery." *Stabilus v. Haynsworth, Baldwin, Johnson and Greaves, P.A.*, 144 F.R.D. 258, 266 (E.D. Pa. 1992).

Zurich's employees should not have to worry that information regarding, for instance, health problems or interpersonal conflicts will be needlessly disclosed, even under a protective order. However, this privacy interest should not trump information that is clearly relevant to Shaw's case. The Court finds that Zurich must produce any document from the requested personnel files having to do directly with Zurich employees' acceptance or denial of claims of any kind. This criterion is to be read broadly, and shall include, for example, evaluations of an employee's aggregated claims paid or denied; characterizations of an employee's attitude with respect to questionable claims; or records of bonuses tied to claim handling. However, Zurich may withhold all other personnel information not specifically described above, including but not limited to employees' financial account data or health information. Zurich shall prepare and serve a privilege log describing any documents withheld from this request.

### 7. Zurich's Policies and Procedures Manual

Shaw requests production of a set of policies and procedures relating to claim processing and referral of claims to an independent medical examiner. These policies bear directly on Shaw's claim of bad faith denial of benefits. Zurich appears to contend that its policies are protected by Texas trade secret law.

As noted above, federal courts rely on state law to decide questions of privilege. The Texas Rules of Evidence state clearly that "a person has a privilege . . . to refuse to disclose . . . a trade secret owned by the person, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." Tex. R. Evid. 507. A trade secret is broadly defined as a "formula, pattern, device or compilation of information used in a business, which gives the owner an

opportunity to obtain an advantage over his competitors who do not know or use it." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (quoting *Taco Cabana Intern. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991). It would be easy to read this definition as protecting, not only information that derives its *value* from secrecy, but also information that would *harm* the owner if disclosed. This is what Zurich is claiming here. Essentially, Zurich benefits from nondisclosure of its policies and procedures because, to the extent that its practices are unknown to its competition, its competitors are less able to seek out an advantage.

The Court's standard protective order (which, the Court notes, the parties have not yet protects against ordinary disclosures that might harm a party. Trade secret protection, however, exists to protect information that is valuable *only* if it is kept secret—classically, recipes or algorithms. Zurich has not made a case for why the underlying value of its claims processing policies and procedures *depends* on their being unavailable to its competitors. Shaw's discovery request is inherently based on the assertion that allowing the privilege would conceal fraudulent or unjust conduct. Accordingly, Zurich is wrong to withhold its policies and procedures manual on the basis of trade secret privilege.

### 8. Zurich's Disclaimers

Shaw also asks the Court to "remove all language of Defendant's responses as 'subject to and without waiving the foregoing objections and privileges.'" Shaw fears that this language gives Zurich some additional right to amend discovery or introduce documents at trial beyond the bounds of the Federal Rules of Civil Procedure. Zurich has not, thus far, attempted to assert that its objections make the Federal Rules inapplicable. As such, no controversy on this matter is

currently ripe for judicial intervention, and the Court properly elects to take no action at this time. However, as general guidance to the parties, the Court does not generally allow broad and general qualifiers to work a surprise on an opposing party in contravention of the Federal Rules of Civil Procedure.

### 9. Zurich's Request for a Protective Order

To the extent that Zurich presents the Court with a request for a protective order on the basis of grounds other than its opposition to Shaw's motion to compel, the Court finds such a request proper and will enter its standard protective order separately but concurrently with entry of this Order. Such protective order shall not limit the effect of the Court's rulings herein. Any changes or adjustments to the Court's standard protective order may be resolved through a subsequent motion tendered to the Court.

## IV. <u>CONCLUSION</u>

In accordance with the reasoning set forth above, **IT IS HEREBY ORDERED** that:

1. Zurich shall produce unredacted versions of previously withheld or redacted documents labeled ZAIC 29-541, as set forth in Zurich's Privilege Log for Shaw's First Request for Production;

2. Zurich shall respond to Shaw's First Interrogatory No. 1 and Second Request for Production No. 8, in compliance with instructions set forth in Section (III)(3) of this Order;

3. Zurich shall respond to Shaw's First Interrogatory No. 3, in compliance with instructions set forth in Section (III)(4) of this Order;

4. Zurich shall respond to Shaw's Second Request for Production No. 7, in compliance with instructions set forth in Section (III)(6) of this Order;

5. Zurich shall respond to Shaw's Second Request for Production Nos. 11, 12, and 13, in compliance with instructions set forth in Section (III)(7) of this Order;

Shaw's motion to compel (Dkt. No. 43) is **DENIED** in all respects other than those noted above.

Zurich's motion for a protective order (Dkt. No. 52) is **GRANTED**, as specified above.

**So ORDERED and SIGNED this 26th day of June, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE